U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

OCT 14 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LUIS CORZO, SR. | : | DOCKET NO. 04-CV-2396 |
| VS. | : | JUDGE MINALDI |
| STATE OF LOUISIANA, THROUGH DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, WACKENHUT CORRECTIONS CORPORATION AND THE GEO GROUP, INC. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion For Summary Judgment, [doc. 26], filed by defendant The GEO Group (hereinafter "GEO"). The plaintiff, Luis Corzo, Sr., filed an Opposition [doc. 28]. GEO filed a Reply [doc. 31]. This matter is set for a jury trial on November 17, 2008.

## FACTS

Mr. Corzo is suing GEO[1] for injuries allegedly sustained on July 13, 2003 while riding a horse at Allen Correctional Center.[2] GEO maintains a stable with several horses.[3] Mr. Corzo, who at the time was an inmate at Allen Correctional Center, was assigned to clean and maintain

---

[1] GEO operates Allen Correctional Center.

[2] Compl. ¶¶ 2-5 [doc. 1].

[3] Mem. in Support of Def.'s Mot. For Summ. J., at 1 [doc. 26].

1

the stable.[4]

The parties dispute whether GEO had displayed a warning required by La. Rev. Stat. Ann. § 9:2795.3(F) that sets forth protections contained in the Equine Immunity Statute at the time of the alleged incident. GEO submits two affidavits stating the sign was in place at the time of the incident, along with a photograph of the sign.[5] Mr. Corzo submits an affidavit of a former inmate, Joseph Duhon, who states he was familiar with the stable at the time of the alleged incident and does not recall a sign being posted.[6]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the file, including the opposing party's affidavits, demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.* In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

---

[4] Compl. ¶ 6. Mr. Corzo alleges that he was required to ride horses as part of his assignment. GEO disputes this assertion.

[5] Def.'s Exs. A and B.

[6] Pl.'s Ex. A (Joseph Duhon Aff.)

2

475 U.S. 574, 587 (1975). A grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party...." *Id.*

## LAW

Louisiana's Equine Immunity Statute grants immunity to defendants sued for injuries resulting from the inherent risk of equine activities:

> Except as provided in Subsection C of this Section, an equine activity sponsor, an equine professional, or any other person, which shall include a corporation or partnership, shall not be liable for an injury to or the death of a participant resulting from the inherent risks of equine activities and, except as provided in Subsection C of this Section, no participant or participant's representative shall make any claim against, maintain an action against, or recover from an equine activity sponsor, an equine professional, or any other person for injury, loss, damage, or death of the participant resulting from any of the inherent risks of equine activities.

La. Rev. Stat. Ann. § 9:2795.3(B). Equine professionals and equine activity sponsors do not receive immunity if they fail to "make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity and to safely manage the particular equine based on the participant's representations of his ability." *Id.* § 9:2795.3(C)(2).

The equine immunity statute requires equine professionals and equine activity sponsors to post and maintain signs in compliance with La. Rev. Stat. Ann. § 9:2795.3(F)[7]:

---

[7] La. Rev. Stat. Ann. § 9:2795.3(F) requires the following notice:

WARNING

Under Louisiana law, an equine activity sponsor or equine professional is not liable for an injury to or the death of a participant in equine activities resulting from the inherent risks of equine activities, pursuant to R.S. 9:2795.3.

3

> Every equine professional and every equine activity sponsor shall post and maintain signs which contain the warning notice specified in Subsection F of this Section. Such signs shall be placed in a clearly visible location on or near any stable, corral, or arena where the equine professional or the equine activity sponsor conducts equine activities. The warning notice specified in Subsection F of this Section shall appear on each sign in black letters, with each letter to be a minimum of one inch in height. Every written contract entered into by an equine professional or by an equine activity sponsor for the providing of professional services, instruction, or the rental of equipment or tack or an equine to a participant, whether or not the contract involves equine activities on or off the location or site of the equine professional's or the equine activity sponsor's business, shall contain in clearly readable print the warning notice specified in Subsection F of this Section.

*Id.* § 9:2795.3(E). The failure to comply with La. Rev. Stat. Ann. § 9:2795.3(E) prevents an equine professional or equine activity sponsor from invoking immunity. *Id.* § 9:2795.3(G).

An equine activity sponsor is defined as:

> an individual, group, club, partnership, corporation, or other entity, whether or not the sponsor is operating for profit or nonprofit, which sponsors, organizes, or provides the facilities for an equine activity, including but not limited to a pony club; 4-H club; hunt club; riding club; licensed racetrack; licensed training centers; school and college sponsored class, program, and activity; therapeutic riding program; and any operator, instructor, and promoter of an equine facility, including but not limited to a stable, clubhouse, ponyride string, fair, farm, ranch, and arena at which the activity is held.

*Id.* § 9:2795.3(A)(4).

## ANALYSIS

GEO asserts that La. Rev. Stat. Ann. § 9:2795.3(B) bars Mr. Corzo's suit. GEO argues that a horse bucking is an inherent risk of equine activity, and as such, GEO is entitled to

immunity. GEO further argues that, as a corporation, GEO is entitled to immunity regardless of whether it posted a warning as mandated by La. Rev. Stat. Ann. § 9:2795.3(E). Alternatively, GEO argues that if it is an equine activity sponsor and is required to post a warning, GEO did post a warning in compliance with La. Rev. Stat. Ann. § 9:2795.3(E).[8]

Mr. Corzo opposes GEO's Motion For Summary Judgment on three grounds. First, Mr. Corzo argues that the Equine Immunity Statute does not apply in this case because he was not a "participant" as defined by La. Rev. Stat. Ann. § 9:2795.3(A)(7). A "participant" is:

> any person, whether amateur or professional, who engages in an equine activity, whether or not a fee is paid to participate in the equine activity, and any equine stabled, training, or running on the racetrack or at a licensed training center and any jockey, exercise person, trainer, owner or employee, agent, or independent contractor of each.

La. Rev. Stat. Ann. § 9:2795.3(A)(7). Mr. Corzo argues that the statute contemplates someone who voluntarily participated in equine activity. Mr. Corzo argues that he did not voluntarily participate in equine activity, but instead was "assigned" to work at the stable and was "required to clean and maintain the stable." Because the plain text of the statute does not require voluntary participation, and Mr. Corzo does not cite any case law in support of his argument, this Court finds that Mr. Corzo was a participant as defined by La. Rev. Stat. Ann. § 9:2795.3(A)(7).

Second, Mr. Corzo argues that there is a question of fact as to whether GEO posted a warning notice in compliance with La. Rev. Stat. Ann. § 9:2795.3(F). Mr. Corzo submits an affidavit by Joseph Duhon, who was incarcerated at Allen Correctional Center at the time of the incident. Mr. Duhon stated that he was familiar with the stable and does not recall a warning

---

[8] Def.'s Exs. A, B.

sign.[9]

GEO is an equine activity sponsor and was thus required to post a warning in compliance with La. Rev. Stat. Ann. § 9:2795.3(E) to receive immunity. By GEO's own admission, it "operated a stable at Allen Correctional Center..."[10] Section 9:2795.3(A)(4) defines equine activity sponsor as, *inter alia*, a "corporation" operating for profit or nonprofit that "operate[s]" an equine facility. Because both parties have submitted competent summary judgment evidence as to whether GEO posted a warning at the time of the alleged incident, there is a genuine issue of material fact for trial.

Mr. Corzo further argues that there is a question of fact as to whether the letters are the statutorily-required height of one inch because Mr. Onellion's affidavit did not attest to the height, nor did the photograph have a frame of reference. In Reply, GEO submitted a photograph of the sign with a ruler next to the letters, demonstrating that the letters are at least one inch high.[11] Accordingly, GEO's sign complies with La. Rev. Stat. Ann. § 9:2795.3(F),[12] and the issue for trial is whether the sign was in place at the time of the alleged accident.

Third, Mr. Corzo argues that GEO is not entitled to immunity because it "[f]ailed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity and to safely manage the particular equine based on the participant's representations of his ability." La. Rev. Stat. Ann. § 9:2795.3(C)(2). Mr. Duhon's affidavit

---

[9] Pl.'s Ex. A.

[10] Def.'s Mem. in Support of Mot. For Summ. J., at 1 [doc. 26].

[11] Def.'s Ex. A [doc. 31].

[12] *See* Def.'s Ex. B.

states that Mr. Corzo told him he was required to ride horses and that he did not feel safe riding horses.[13] In Reply, GEO argues that Mr. Duhon's affidavit is hearsay, which is inadmissible for summary judgment motions. *See Cormier v. Pennzoil*, 969 F.2d 1559, 1561 (5th Cir. 1992).

Pursuant to Fed. R. Ev. 801(c), "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Because Mr. Duhon attests to what Mr. Corzo told him to prove the truth of the matter asserted, Mr. Duhon's statements constitute inadmissible hearsay not governed by any hearsay exception. Accordingly, Mr. Corzo has failed to establish that there is a material issue of fact as to whether GEO loses immunity for failing to comply with La. Rev. Stat. Ann. § 9:2795.3(C)(2).

Because this Court finds there is a material issue of genuine fact as to whether the sign was posted in a "clearly visible location on or near the stable" at the time of the incident,

IT IS ORDERED that the Motion For Summary Judgment, [doc. 26], is hereby DENIED.

Lake Charles, Louisiana, this ___6___ day of ___Oct___, 2008.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[13] Pl.'s Ex. A.

7